UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARGO H. LECHNER,

        Plaintiff,

    v.

THE BOEING COMPANY,

        Defendants.

Case No.  C15-1414RSL

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

     This matter comes before the Court on "Defendant The Boeing Company's Motion for Summary Judgment." Dkt. # 33. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

1    Having reviewed the memoranda, declarations, and exhibits submitted by the

2    parties[1] and taking the evidence in the light most favorable to plaintiff, the Court finds as

3    follows:

4                                          **BACKGROUND**

5        In early 2009, plaintiff began experiencing debilitating anxiety attacks. By late

6    2010, her condition was adversely affecting her work performance, and she requested an

7    accommodation from the human resources manager of her then-employer, Nabtesco

8    Aerospace, Inc. She was fired ten days later. Plaintiff filed an EEOC complaint against

9    Nabtesco. The EEOC issued a "right to sue" letter, and plaintiff sued – and settled with –

10   her former employer. Plaintiff was unable to find permanent, full-time employment,

11   however. She applied for a number of jobs, at Boeing and elsewhere, before being

12   offered a position as a Product Data Management Specialist 3 at Boeing in August 2012.

13       At the time of her interview, the panel of interviewers had plaintiff's resume

14   which revealed two lengthy periods of unemployment, the second of which followed her

15   termination from Nabtesco in November 2010. Dkt. # 36-2 at 43. Nevertheless, the

16   interviewers gave her employment history a consensus rating between "acceptable" and

17   "more than acceptable." Dkt. # 37-4 at 23. Plaintiff subsequently completed an on-line

18   application for the Product Data Management Specialist 3 position in which she noted

19   that she had been "Dismissed/Discharged/Terminated/Fired" from Nabtesco and had

20   _____

21       [1] For purposes of this motion, the Court has not considered the declaration of Curtis
     Moseley or the attached chart summarizing forty-nine applicant files that were not made

22   available to plaintiff for inspection. Even if the contents of the chart are presumed accurate, it
     does not provide enough information to determine whether any of the applicants are truly

23   comparable to Ms. Lechner. Plaintiff's motion to strike is GRANTED in this respect. The Court
     has, however, considered the notes taken by Kathy Cho in light of the supporting declaration

24   offered in reply. Dkt. # 39. The abnormality regarding the timing of certain notes may lessen the
     weight given to the evidence, but it does not make it inadmissible.

25       The issues raised in defendant's motion can be decided based on the papers submitted.
     Plaintiff's request for oral argument is DENIED.

26

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 2

been unemployed since then. Dkt. # 36-2 at 34. The offer of employment extended on

August 1, 2012, was contingent on the satisfactory completion of, among other things, a

medical screening and background investigation. Dkt. # 36-2 at 51. Plaintiff filled out a

detailed health questionnaire in which she stated that she was taking medication for

anxiety and depression but that her conditions would not impact her ability to perform as

a Product Data Management Specialist 3 and that no job modifications were required.

Dkt. # 36-2 at 58. After making specific note of the fact that plaintiff suffers from

anxiety and depression but had not made a request for accommodation, a nurse with

Boeing Medical contacted plaintiff, confirmed that her symptoms were controlled by

medication, and medically cleared plaintiff to work at Boeing on August 8, 2012. Dkt.

# 36-2 at 59.

That same day, Boeing received a report from the third-party vendor it used to

perform background checks. The report confirmed that plaintiff had worked for

Nabtesco, but noted that its Human Resources Administrator provided no other

information and that plaintiff had indicated on her application that she had been

"involuntary/discharged/dismissed for cause." Dkt. # 36-2 at 45-46. The vendor

concluded that "this is a concern." Dkt. # 36-2 at 46. An adjudicator from Boeing's

Background Screening Department, Kathy Cho, contacted plaintiff to ask her about the

circumstances surrounding her discharge from Nabtesco. Plaintiff explained that her

anxiety had impacted her work performance, that she had requested an accommodation,

and that she had been terminated ten days later. She also mentioned that she had filed an

EEOC complaint against Nabtesco and had received a right to sue letter. Dkt. # 36-2 at

28-29. Ms. Cho and two other Background Screening Department employees reviewed

the information and concluded that "applicant's negative work history is concerning;

also she hasn't had other employment since her termination - no other employment to

show that she is willing to function and work in a positive manner." Dkt. # 36-2 at 29. The hiring manager, Joseph Borries, was notified that the background check had revealed inconsistencies or abnormalities in plaintiff's work history and decided "there's too much risk in this, and [he, the skill team leader, and human resources] decided not to proceed." Dkt. # 37-4 at 25. At the time, Mr. Borries was aware that plaintiff had filed an EEOC complaint against her former employer.

Ms. Cho left a message for plaintiff notifying her that the offer of employment was withdrawn. Dkt. # 36-2 at 29. When plaintiff questioned whether the decision was because of her disability, she was told "that her disability was not considered when [Boeing] determined her eligibility - the decision was based on the information provided by the applicant regarding her discharge. The concerns are the fact that she wasn't able to perform her duties and [was] discharged due to poor performance. She has no other subsequent employment to demonstrate that she's able to hold a position." Id. This lawsuit followed. Plaintiff, proceeding pro se, asserted claims of failure-to-hire on the basis of disability and retaliation under the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq*. Plaintiff's motion for appointment of counsel was granted, and counsel appeared on her behalf in January 2016.

## DISCUSSION

### A. Discrimination

Under the WLAD, it is an unfair practice for an employer to refuse to hire an applicant on the basis of any sensory, mental, or physical disability. RCW 49.60.180(1). At trial, plaintiff will have the burden of proving that her disability was a "substantial factor," generally defined as a "significant motivating factor," in Boeing's decision not to hire her. Mackay v. Acorn Custom Cabinetry, Inc., 127 Wn.2d 302, 310-11 (1995). The Washington Supreme Court has determined that a "but for" or "determining factor"

causation analysis erects too high a barrier to recovery and is contrary to the legislature's intent to eradicate discrimination in this state. Id. In light of the difficulty in proving subjective intent, the Supreme Court has also noted that summary judgment in the employer's favor is seldom appropriate in WLAD cases. Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 144 (2004). "When the record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation." Scrivener v. Clark College, 181 Wn.2d 439, 445 (2014) (citing Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 90 (2012)).

Where, as here, plaintiff lacks direct evidence of discriminatory motive, Washington courts use the McDonnell Douglas burden-shifting analysis to determine whether there is a triable issue of fact. Kastanis v. Educ. Emp. Credit Union, 122 Wn.2d 483, 490-91 (1993). McDonnell Douglas Corp. v. Greene, 411 U.S. 792, 802 (1973), was a failure-to-hire case in which the United States Supreme Court described plaintiff's initial burden as "showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." The prima facie case, while not particularly onerous to establish, serves to "eliminate the most common nondiscriminatory reasons for the plaintiff's rejection." Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). The fourth element of the prima facie case, for example, "eliminates cases where the employer changes its mind either about the qualifications sought (ruling out the plaintiff as a candidate) or about whether to fill the vacancy at all." Mikkelsen v. Pub. U. Dist. #1 of Kittitas County, 195 Wn. App. 922, 937 (2016). The precise elements of a prima facie case will vary depending on the factual situation and the nature of the discrimination

1  claim. <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13.

2      Boeing acknowledges that plaintiff is disabled within the meaning of the WLAD

3  and that her application was rejected. It argues, however, that she was not qualified for

4  the job because she could not pass the background check and that she cannot show that

5  other, non-disabled applicants were treated more favorably than her.

6          **1. Qualified for the Position**

7      Plaintiff was undoubtedly qualified for the Product Data Management Specialist 3

8  position: she was the top rated interviewee and was actually offered the job. While

9  successful completion of a background check may be a qualification for some jobs,

10  Boeing concedes that being fired from prior employment is not an automatic disqualifier.

11  Dkt. # 33 at 5. <u>Cf.</u> <u>Brown v. Sara Lee Corp.</u>, 2009 WL 995755, at *6 (S.D. Ind. 2009)

12  (potential employer considered termination with no eligibility for rehire to be

13  disqualifying). The Background Screening Department is tasked with performing an

14  individualized assessment of the each applicant's circumstances and making a

15  determination regarding hireability. According to Boeing's Background Screening

16  Adjudication Matrix, determining whether a previously-discharged applicant should be

17  hired depends in part on how Boeing would have treated the applicant in similar

18  circumstances and in part on the appropriate characterization of the discharge (whether it

19  was for some sort of misconduct, for example, or for a lack of particular skills). Dkt.

20  # 37-4 at 69. Plaintiff's theory of the case is that discriminatory intent wormed its way

21  into this discretionary process. In these circumstances, the background screening was

22  less a job qualification than a potentially legitimate, nondiscriminatory justification for

23  rejecting the applicant despite her qualifications for the job.

24          **2. Non-Disabled Replacement**

25      The fourth element of the prima facie case has undergone significant change in

26

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6

1   the case law since it was first posited in McDonnell Douglas. As discussed above, the

2   element started out as a reflection of the fact that discrimination is not a reasonable

3   inference in a failure-to-hire case where the employer has changed its mind regarding the

4   necessary qualifications or the need to hire in the first place. Over the course of decades,

5   however, the fourth element morphed into a comparative test, usually stated as "plaintiff

6   was treated differently than non-disabled persons" or "the position went to a person not

7   in the protected class." Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 150 (2004); Kuyper v.

8   State, 79 Wn. App. 732, 735 (1995). How these formulations give rise to an inference,

9   one way or the other, regarding the employer's motivation is not clear: the implicit

10  assumption seems to be that if an employer hires a disabled person, it cannot have

11  discriminated against another disabled person.

12      The United States Supreme Court rejected such an assumption, however. In

13  O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996), Justice Scalia

14  questioned the logical connection between the "replaced by someone outside the

15  protected group" element of the prima facie case and the illegal discrimination at issue,

16  noting that "[t]he fact that one person in the protected class has lost out to another person

17  in the protected class is thus irrelevant, so long as [s]he has lost out because of [her

18  disability]." In Washington, courts have been willing to excuse the fourth element as

19  unduly "rigid, mechanized, or ritualistic" when the circumstances otherwise give rise to

20  an inference of discriminatory intent. Hatfield v. Columbia Fed. Savings Bank, 57 Wn.

21  App. 876, 882 (1990) (quoting Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355,

22  363 (1988)). See Brownfield v. City of Yakama, 178 Wn. App. 850, 873 (2014);

23  Callahan v. Walla Walla Housing Auth., 126 Wn. App. 812, 819-20 & n.1 (2005). More

24  recently, both the Washington Court of Appeals and the United States District Court for

25  the Western District of Washington have concluded that replacement by someone

26

outside the protected class is not particularly relevant to the discrimination analysis and should not, therefore, be an element of the prima facie case. <u>Mikkelsen</u>, 195 Wn. App. at 941-42;[2] <u>Creekmore v. U.S. Bank, N.A.</u>, 2010 WL 3211925, at * 4-5 (W.D. Wash. Aug. 12, 2010). Rather, these courts concluded that the termination of a qualified, protected employee raises a rebuttable inference of discrimination in virtually every case, with the employer having the opportunity to dispel the inference.

> Where a discharged employee *is* replaced by someone within the protected class, it will not be overlooked in the <u>McDonnell Douglas</u> analysis. It is relevant evidence, helpful to the employer, that will bear on the step three determination of whether a plaintiff claiming discrimination has established that the employer's proffered reason was pretext or that discrimination was a substantially motivating factor in the employment decision.

<u>Mikkelsen.</u> 195 Wn. App. at 943 (emphasis in original). The Court finds these cases persuasive, but notes that the Washington Supreme Court has not yet weighed in on this issue.

The Court will therefore rely on the more traditional elements set forth in the seminal failure-to-hire case, <u>McDonnell Douglas</u>. Given the purpose of the prima facie case, the question is whether the withdrawal of plaintiff's job offer could be reasonably explained by a nondiscriminatory factor, such as the fact that Boeing decided not to fill the position at all, that would prevent an inference of discrimination from arising in the first place. While there is evidence in the record to support a finding that Boeing decided to leave the Product Data Management Specialist 3 position for which plaintiff interviewed unfilled (Dkt. # 36-2 at 22), the timing of that decision and whether it had

---

[2] Mikkelsen notes that "the overwhelming majority of federal circuit courts that have examined the issue have concluded that a discharged employee should not have to demonstrate that she was replaced with someone outside of her protected class as part of the <u>McDonnell Douglas</u> prima facie case." 195 Wn. App. at 940.

any impact on the withdrawal of plaintiff's offer is unclear. Mr. Borries states that he and the skill team leader decided not to fill the position after plaintiff's background investigation went awry. That decision does not seem to have had any causal impact on Ms. Cho's decision to withdraw plaintiff's job offer, however. The record shows only that Ms. Cho was notified that the hiring manager and skill team leader supported the no-hire decision: there is no indication that she was aware that the position was no longer needed. Dkt. # 36-2 at 29.

In the circumstances presented here, plaintiff has established that she is a member of a protected class, that she was qualified for the position for which she applied, that her job offer was withdrawn once her disability became known, and that, as far as the decisionmaker was aware, the position remained open with no change in qualifications. Because the most common nondiscriminatory reasons for plaintiff's rejection have been eliminated, these circumstances give rise to an inference of discrimination.

### 3. Legitimate, Nondiscriminatory Reason

If the circumstances give rise to an inference of discrimination, the employer then has an opportunity to articulate some legitimate, nondiscriminatory reason for the employee's rejection. McDonnell Douglas, 411 U.S. at 802. Boeing has plainly done so. It maintains that it withdrew plaintiff's job offer when it discovered that plaintiff's discharge from her previous employer was for performance issues. Boeing's reason for rejection thus meets the prima facie case, and the presumption of discrimination falls away.

### 4. Genuine Issue of Fact

The third prong of the McDonnell Douglas test requires plaintiff to show that there is a genuine issue of material fact regarding Boeing's motivation for withdrawing the job offer. Plaintiff may do so by offering evidence from which a reasonable jury

could conclude either (a) that the reason proffered by Boeing is pretextual or (b) that, although the "stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." Scrivener, 181 Wn.2d at 446-47. Plaintiff has met her burden. Taken as a whole in the light most favorable to plaintiff, the record could reasonably support a finding that Boeing misread plaintiff's application, demanded documentary evidence or a finding of discrimination before it would give credit to her statements, and misapplied the applicable hiring matrix in order to justify the withdrawal of plaintiff's job offer when it discovered that she had a disability that might affect her performance. Plaintiff never said she was discharged for cause: that gloss was added by Boeing's third-party vendor and could not reasonably be relied upon by the decisionmaker who had access to the actual application. When the Background Screening Adjudicator, Ms. Cho, investigated further, she was told that plaintiff had had disability-related performance problems at her prior job, that plaintiff had requested an accommodation, and that she had been fired within days of the request. Ms. Cho seems to have discounted every aspect of plaintiff's report other than the acknowledgment that she was having performance problems. There is no indication that Ms. Cho made any effort to consider how Boeing would have responded to a request for accommodation in similar circumstances or to independently evaluate the appropriateness of the discharge under Boeing's policies. The jury will have to decide whether the alleged performance issues were simply a pretext for disability discrimination.

**B. Retaliation**

To establish a prima facie case of retaliation, plaintiff must show that she engaged in statutorily-protected activity, that she suffered an adverse employment action, and that there is a causal connection between the two. Currier v. Northland Servs., Inc., 182 Wn. App. 733, 742 (2014). One factor supporting the existence of a causal connection is a

close proximity between the time of the protected activity and the employment action. Hollenback v. Shriners Hosp. for Children, 149 Wn. App. 810, 823 (2009). Boeing argues that plaintiff's EEOC complaint was filed almost two years before Boeing withdrew its offer of employment, negating any inference of causation. The argument is unpersuasive. Boeing learned of plaintiff's EEOC complaint days before it decided that she was not good employee material. Far from being too remote, the timing suggests a link between the two events.

Once a prima facie case of retaliation is presented, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. Renz v. Spokane Eye Clinic, P.S., 114 Wn. App. 611, 618 (2002). Plaintiff ultimately bears the burden of persuasion, however, and must raise an inference of retaliation to withstand a motion for summary judgment. Hollenback, 149 Wn. App. at 823. Boeing argues that it withdrew plaintiff's job offer when it discovered that she was discharged from her prior employment for performance issues, not because she filed an EEOC complaint against her employer. That may be true, but a jury will have to determine whether plaintiff's EEOC complaint was a substantial motivating factor – separate from or in addition to her disability – in the decision to withdraw the job offer. Mr. Borries' ambiguous concerns about "risks," the fact that the Background Screening Committee discussed the EEOC complaint when determining how to characterize and evaluate plaintiff's job history, and the temporal relationship between the relevant events give rise to a genuine issue of fact regarding retaliatory motive.

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt. # 33) is DENIED.

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11

1    Dated this 24th day of January, 2017.

2

3                                    _MM S Lasnik_____

4                                    Robert S. Lasnik
                                     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 12